Good afternoon, Your Honors. I appreciate the court rescheduling this argument. Vivian Fu for Petitioner Appellant, Danny McDowell. I'll start with the court's request to discuss whether any of the current claims were previously raised in his initial habeas petition filed in 2000, which was not part of the record below. The magistrate judge, Judge Nakazato, was the same one, actually, who prepared the R&R in both cases, but he doesn't appear to have looked at this issue. So in his 2000 habeas petition, McDowell raised only a claim of ineffective assistance of counsel for failing to investigate his medical and mental condition and failing to present evidence that he suffered from diminished mental capacity. So this potentially overlaps with one of his current ineffective assistance counsel IAC claims, which is the claim that trial counsel was ineffective in failing to investigate his mental incompetency. So he raises in the 2000 petition that he was, that it would have been a defense, it's pro se, so we have to construe it liberally, that he was unconscious or that it would be a defense to the commission of the crime to the mental state. And he does make that point, I think, in the 2000 petition. He says, clients suffered from mental diminished capacity and evidence was in existence before trial that would support this defense. And so my question as to the claim of relating to Aretha McDowell's declaration was whether that's merely new factual allegations or evidence supporting this claim or basically the same claim. Well, we would argue that's a separate claim, separate grounds for ineffective assistance of counsel, that he never interviewed Aretha McDowell or put her on the stand. But her testimony was in effect that he didn't have the necessary mental state to commit the crime. So it seemed to me analogous to his new evidence supporting his claim that he didn't have the mens rea to commit the offense. Well, and also that she was the mastermind and she directed everything. But that wouldn't be a defense if he had the mental state, right? Yes, yes. So yes, I think it's related, but I would see it as a distinctive IAC claim that he didn't put her on the stand. And yes, she would have talked about how he was so deranged from his medications and that she misled him into saying that. So her declaration merely supports his claim of a lack of the appropriate mental state. That's how I read it. So explain to me why that, under our standard in Gilbranson and West, it isn't just a new factual allegation supporting the same claim that he had in 2000. Well, I guess I would just, I would distinguish it as one, in his first, in 2000 he was saying, what was he saying, that counsel failed to present evidence that he didn't have reduced mental capacity. And the new evidence would be this new witness, Aretha McDowell, that was not interviewed and was not, did not testify at trial, and so her testimony, everything that she had to say was never made known to the jury. That that would be a different angle of ineffective assistance of counsel. That's how, I would distinguish it as a different claim that is not precluded by 2244. Could I also ask you, just as a threshold matter, there was some information in the docket that your client address change was unknown, and I just want to confirm that you're in contact with your client and that he does want to pursue this. Yes, he does. I asked him that. Yes, he does. Thank you. And he is out of custody, yes. So our position would be that one of the IAC claims might be precluded because it was raised previously, but at a minimum his other three claims, that counsel was ineffective for failing to interview Aretha or call her as a witness, that he was trialed while he was incompetent, and that the trial court failed to conduct an inquiry into his incompetence, that those are all were not previously raised and are not foreclosed pursuant to 2244. Why aren't they foreclosed? Let's start with the claim about the wife. Why isn't that one foreclosed? You mean as a previously raised claim? As a claim for which there's nothing new here. I mean, he knew as of the time of trial that he hadn't called his wife. He knew as of the time of 2000 when he filed his habeas corpus claim that his wife hadn't been called. Well, I think our position all along has been that he clearly suffers from severe mental and physical issues. He's had three brain surgeries, and one of them was on the eve of trial, and it's unclear from the record what his mental state was, during the time of the crime, during trial, right before surgery, right after trial. The record is silent on what happened at trial that caused the court to order a neurologist. Right, but he knew that at the time, and he knew that as of 2000, he knew that the lawyer hadn't called his wife. He didn't raise it in his first habeas. Why does he get a second shot at this? How does that satisfy 2244, a second or successive? You know, he may have become aware of it in 2009, which is when his wife, or aware that his... He was aware in 2009 that his wife wasn't called as a witness? Or that his wife had this to say. I mean, his position all along has been that he doesn't remember what happened at the crime. The factual predicate was at least, of all of these claims, was at least in the 2000 petition. He talks about his mental difficulties, both at the time of crime and at the time of trial, and that he underwent a craniotomy at that point. So all of the factual predicate is laid out in his 2000 petition. So why doesn't that fail then, at least under 2244b-2? Well, he does talk about receiving his lawyer's file in 2011, that he had been trying to get for years and apparently had to get the state bar involved. I think he talks about that at ER. But in 2000, he knew about his mental state and the same claims of incompetence he's raising now. So that factual predicate, at least, was laid out in his 2000 habeas petition, wasn't it? Well, I guess our position would be that his mental state was such that he wasn't able to properly... I'm still here. I think I didn't move enough. Our lights went off. We'll get it. I'm still here. You may not see me, but I can see you. We have these lights. Our thanks to GSA for saving us money. That's right. If you don't move enough, the lights go off. Liz, we'll go ahead. I'm sorry. I lost my train of thought. We were talking about the factual predicate showing that he wrote out in his 2000 petition about his lack of memory, his confusion, his brain surgery, his not understanding what was going on. So that seems to be the factual predicate of all of his claims now. So under 2244b2, it seems that the factual predicate was known at least by 2000. Why is that wrong? Well, I think he also does talk about when he discovers his lawyer's file that he got in 2011. And that reminded him of other things that happened, such as a plea bargain that was offered to him that he couldn't remember. And he cites that as new evidence as well that he bases his claims on. Go ahead. Well, a plea bargain at this point wouldn't do him any good, would it? Because he's already been... No, yes. Yeah. So that really isn't going to form the basis of a claim, is it? No, I don't think he's using it as a basis for his claim. But he's using it as an example of... And I don't know what else was in that file because he only cites a couple of things. And I guess that would be one of the reasons that we would request a remand to the district court for an evidentiary hearing. Because our position is based on this record, which is really not that factually developed, that a summary dismissal was not appropriate. You know, the claim of mental disability, of a mental impairment such that you can't remember things and things come back to you from time to time is sort of difficult to deal with. I mean, where's the end of this process? Do we get a third or successive and a fourth or successive as he remembers things on into the future? You just have to keep adding things to this? Well, I think the difficulty, too, is that he never got a first shot. So his first shot in 2000 was, you know, obviously denied us. We deem it to be an adjudication on the merits, even though in the court, and that's sort of getting gone now, right, because we denied us EOA at that point. Yes, that's correct. I have 10 seconds. Yeah, I've got a couple more questions, so I'm not worried about the clock. Okay. All right. I'm sorry. Well, I'm still wondering, you know, with the mental disability, at what point does this process end? I mean, because as these are all things, everything that he's alleged are things that for anybody else in his position, they would have been responsible for raising it in the first in the first habeas corpus petition. It's not a surprise to him. It should not have been surprising, but in 2012, but in 1996 or whenever it was, he was tried that his wife did not testify. Okay. This was anybody who attended the trial would have known that. So that's not a that's not a surprise. So how long does this process go on? He gets to come back, keep coming back and telling us, I just remembered something new. Well, I understand the court's hesitation. I think in this case, his what he has alleged all along is his extreme difficulty, that he wasn't even aware of what was going on during the trial. So perhaps he wasn't even aware that his wife was not testifying, testifying. He wasn't he doesn't remember. Yes, but we're now to the point where it's not even a matter of him not being aware of what he did in 2000 and whenever the trial was. But he's now not aware of what happened in 2000 when he filed the first habeas. He's got we have new stuff. I mean, that's it's a whole second level of inquiry that it forces us into, because now we have to we have to figure out whether in 2000 he could have remembered things that happened during the trial. Right. Yeah. I mean, I understand the court's hesitation. But again, again, it's just I think that his position has always been that he has extreme mental difficulty. He can't you know, he has a 73 IQ. He has a lower memory quotient. He has to rely on all of his fellow inmates to draft these petitions for him. So we've raised a number of questions about the actual predicate for the claim. But what about what about B2? So that would be B2 B2. That is what's the clear and convincing evidence here that but for some constitutional error, no reasonable fact finder would have found him guilty. Well, I guess if we take a wreath of a wreath as declaration as completely true and credible, that that would establish that. There are there are contradictions between her affidavit and his affidavit. There are things that she mentions that he that that he that he doesn't mention things that he mentions that she's forgotten to mention. What are we supposed to do with that? I mean, how can we how can we conclude, even if we accepted her affidavit that based on clear and convincing evidence, for example, she doesn't mention the rock and he files an affidavit at the same time says, yes, she had me throw a rock through the window. She she forgets to mention that she said, well, I just had to pick up some stuff and put it in the trunk. I don't know if that's conflicting. I mean, well, they're pretty they're pretty material omissions. Let's let's let's put it at that. We have affidavit signed two days apart. And these are they are husband and wife. And when she mentions the fact that he doesn't mention it and then he mentions the fact that she doesn't mention it. How are we supposed to conclude that this is clear and convincing evidence that but for constitutional error, that he would not have been convicted? Well, I would say to you that at this juncture, that wouldn't be for this court to determine right now because it's such a fact specific inquiry. The one of actual innocence said that would, again, be most appropriate for the district court in the first instance to take a look at that, you know, via evidentiary hearing, they could both testify and get it. I don't know. Can I ask you're not arguing, as I understand it, factual innocence, are you? I mean, you he committed the burglary, right? He was. Well, it appears that he was there. He's a participant in the burglary. There was an eyewitness who saw him carrying a monitor out. So. I mean, it seems to me. So what you're saying, though, is because of his diminished capacity, he didn't have the necessary mental ability to form intent. Is that right? That's right. He didn't have the necessary medical capacity to form the requisite intent, which is an essential element of commercial burglary. I mean, you're not arguing that he was asleep in the car because there's some reference even to that. But you're not arguing he was asleep in the car the whole time or anything like that. It's just that he didn't have the he couldn't form the intent. Right. He wasn't able to due to his due to the medications that he was on and the mental state that he was in, that he wasn't able to form the intent to the extent that he was involved. And it's not I mean, you know, the wife was saying that that he was outside and carried some stuff. But it does appear that he was there and and through a walk, a rock through the window and possibly through. Well, that's it. That's his admission. I don't know what we're supposed to do. Counsel, if we if you can't believe your client when he files an affidavit. I don't know what we're supposed to do with that. We've taken you well over your time. I'm going to I'm going to afford you another minute for response. Thank you. Good afternoon, Your Honor. May it please the court. I'm Kevin Vienna, California deputy attorney general on behalf of respondent and appellee in this matter. Yeah. Is this are these new claims or old claims? I think that's a I think it's a close question. But whether all the claims are old claims or not, the I believe, Judge, I could. Are you mentioned the test from Gilbert? Galbraithson? Was I correct there? And it talks about I think that the test there seems to be somewhat ambiguous or not perfectly directory. It talks about whether the the basic thrust or gravamen of the legal claim is the same. His claims all look to be the same to me. That is the underlying problem that he raises is that he had mental difficulties that affected him at the time of the crime, at the time of the trial that were not recognized and dealt with by his counsel and by the trial judge. I think it's I think it's clear that the ineffective assistance of counsel claims are old claims. I think the question about whether whether the trial court's obligation, independent obligation with regard to competence is an old claim is more difficult for us to argue. But I think it is. I think the test is broad enough to encompass that. But even if it isn't broad enough to encompass that claim, a claim of lack of mental competence at the time of trial has nothing to do with guilt or innocence. And so it seems to me that it's precluded statutorily from consideration as a second or successive claim. You're saying under B to little 2i? Yes, Your Honor. Though I don't I mean, I'm unaware of any precedent that that addresses that. But I think simply as statutory interpretation, that's the way it should be. It should be looked at. The court asked, you know, what are we to do at this point? That is, if we get to the question of innocence. And I think surprisingly, Magistrate Judge Nakazato did not get to the question of innocence, although he expressed sort of great skepticism that there was any new evidence or that this new evidence could be considered credible or could reach the standard of 2i of being clear and convincing evidence of innocence. But we have his declaration, as Your Honor noted, the wife said he threw the rock. In the probation report, there is some reference, the probation report that is in the record around, excerpts of record page 82, that's the page that I have cited here on my notes. The wife said he threw the rock. She said she stayed in the car. The defendant also apparently made some statements at the crime scene. And his statement, at least according to the police report that's referred to in the probation report, is that when he and his wife arrived at the shopping center, where the business was that was broken into, said some other dudes were running away, that he just happened to see the computer equipment on the sidewalk. He picked it up and put it in the car, intending to return it to the police. If you put those things together, it seems to me to be impossible, not possible as a matter of law, for him to reach on the basis of a recanting declaration from his wife several years later to meet the clear and convincing standard for innocence. And that's a sufficient basis, I think, I hope the court will agree with me, that's a sufficient basis to deny his appeal of this matter. That is, although it's not the precise basis on which the district court decided, this court can affirm on any appropriate legal basis. Finally, the question about the severity of his mental impairment. No doubt the record shows that Mr. McDowell is worthy of sympathy, that he suffered an injury in the early 1990s that affected him at least periodically over the next several years. At the time of trial, he had another brain surgery to relieve the pressure on the intracranial cyst. But what is missing from his presentation in the district court for a second or successive petition is that any of this affected his ability to discover whatever is new. Perhaps implicitly, the statement from his wife is new, but he never seems to say when he first learned that his wife was willing to testify that he was uninvolved. And the record on his mental impairment is simply open from about 1998 until today, with the exception of the fact that he had one other surgery to repair what seemed to be an open area in his skull. My interpretation is that they put a plate of some sort in his skull. So the district court was presented with a record that provided little information with regard to the severity of his impairment over the period of time for almost 10 years from 1998 to 2009. Consequently, the district court seems to have been correct. If we apply the Bill's standard, and we have no objection to that standard being applied to the determination of diligence, if we apply the Bill's standard, it begins with a requirement for a severe mental disability. Quite frankly, I think it's difficult to transpose bills from severe mental disability, typically meaning a mental illness. I mean, that's the context in which we usually see it, but to someone with a borderline functioning IQ. But assuming that it does transfer to that, he has not shown, he made no effort to show in the district court, that his problem prevented him from learning of this information regarding his wife earlier. Consequently, he failed to meet his burden of demonstrating diligence, or of even raising a question of diligence. Ms. Fu, who has thoroughly briefed this and gone into great depth on the facts of the case, suggests that he didn't have to do any more, and refers to Laws v. Lamarck to say that the district court was bound to hold a hearing. I would disagree. In Laws v. Lamarck, the petitioner made a credible showing of actual incompetence, not simply an impairment of some sort, but of incompetence, claimed specifically incompetence. And Mr. McDowell makes no claim of incompetence. He's been involved in the criminal justice system for a very long period of time. There's no indication that he's been found to be incompetent at any time. The record before the district court just didn't demonstrate that a severe mental impairment, one that prevented him from learning of the factual basis of his claim, assuming that I know what that is, that is assuming that the new predicate is the declaration of his wife, hasn't shown that he had no contact with her, that he never talked to her about it, that this came as a surprise to him after 1998 in any way. Consequently, we think he does not meet the statutory requirements, either based on the decision of the district court, or based on the alternative basis, and that is that he cannot show, and hasn't come close to showing by clear and convincing evidence, that no one would have found him guilty of this crime. If the court has no additional questions, I'll conclude. Thank you, Your Honor. Thank you, Mr. Vieira. Ms. Fu? I just want to address one thing that counsel said with respect to his entitlement to an evidentiary hearing. I think he has made the minimum case that's required, pursuant to laws v. Lamarck and bills v. Clark. He's not required to carry the burden at this stage. He's not required to prove his case. He's just required to lay out enough evidence such that he's entitled to go back to the district court for further factual development of the record. And the fact that the district court, without even requiring a response from the state, much less holding an evidentiary hearing, just summarily dismissed the petition, I think was not proper, given the files in the record in this case. Thank you very much. We thank both counsel for the argument. And with that, the court stands adjourned.
judges: Melloy, Bybee, Ikuta